# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JEFFREY P. ECKERT, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CITY OF CHICAGO, a municipal ) <br> corporation, COOK COUNTY, a ) <br> municipal corporation, SHERIFF ) <br> TOM DART, SHERIFF OF COOK ) <br> COUNTY, unidentified Chicago Police ) <br> officers, and unidentified Cook County ) <br> deputies, agents, and employees, ) <br> ) <br> Defendants. ) | No. 08 C 7397 <br><br> Judge Marvin E. Aspen |

## MEMORANDUM OPINION AND ORDER

Presently before us are two motions to dismiss: one filed by the City of Chicago (the "City") and one filed by Cook County and Thomas Dart, Sheriff of Cook County.[1] The City argues that the *Monell* claim asserted by Plaintiff Jeffrey Eckert should be dismissed because he did not sufficiently identify the policy, custom, or practice that caused his constitutional violation and did not allege a direct link between that policy and his violation. Dart and Cook County join in the City's motion and further argue that any individual claims against Dart must fail because Eckert did not allege that Dart was individually involved in the alleged misconduct. Cook County argues that the claim against it should be dismissed because it cannot be held liable under *respondeat superior* and Eckert did not plead indemnification. For the following reasons,

---

[1] For ease of reference, we refer to portions of this joint motion as Cook County's motion and Dart's motion.

-1-

we grant in part both motions.

## BACKGROUND

While at a restaurant in Chicago late in the evening on December 31, 2007 through early January 1, 2008, Eckert became involved in an altercation with another restaurant patron after the other patron made comments about Eckert's wife. (Compl. ¶¶ 6-7.) Chicago Police Officers ("Officers") responded to a call reporting the incident. (*Id.* ¶ 8.) After conducting interviews, the Officers decided not to arrest anyone based on their involvement in the altercation, but arrested Eckert on an outstanding warrant for his arrest in DuPage County. (*Id.*) The Officers transported Eckert, in handcuffs, to lockup at Chicago Police District 23. (*Id.* ¶ 9.) While at District 23, Eckert requested medical attention and pain medication for injuries to his knee that he sustained during the altercation at the restaurant. Eckert alleges that the Officers continually refused and ignored his requests for pain medication and medical attention. (*Id.* ¶ 10.) He further alleges that the Officers did not give him any food or water while in lockup. (*Id.* ¶ 12.)

At some point during the day on January 1, 2008, Eckert was transported from District 23 to the Cook County jail. (*Id.* ¶ 13.) Eckert requested medical attention and pain medication from the physician and/or physician assistant conducting his "intake medical screening" at the jail and from other jail officials. (*Id.* ¶¶ 14-15.) He also requested that they give him his daily prescription medicine. (*Id.* ¶ 16.) All of Eckert's requests were denied. (*Id.* ¶¶ 15-16.)

In addition to denying his requests for medical attention, Eckert alleges that he was held in a general holding area without an opportunity to sit or lie down. (*Id.* ¶ 18.) Accordingly, Eckert had to stand on his injured leg all day. He was further required to bend his injured leg several times for the purpose of removing his shoes and clothing, and for strip searches. (*Id.*)

Eckert alleges that the standing and bending caused "excruciating pain." (*Id.*) Late on January 1, 2008, Eckert was taken from the general holding area to a cell. The jail officials told Eckert that the cell was available because its prior inhabitant hanged himself, which was, according to Eckert, "an effort to further torment [him]." (*Id.* ¶ 19.) Eckert also claims that he was not provided food or water while at Cook County jail. (*Id.*)

On January 2, 2008, Eckert was transported to DuPage County jail, where he was processed and released. (*Id.* ¶¶ 20-21.) After his release, Eckert went to Northwest Community Hospital, where doctors told him that he needed surgery, but that his knee and leg were too swollen to perform the procedure. (*Id.* ¶ 21.) Eckert was finally able to have the surgery over four months later. Eckert alleges that "[a]s a result of the defendants' malicious delay in treatment, [his] injury was exacerbated, complicated, and required additional treatment and therapy." (*Id.*)

Eckert has since filed a five-count complaint. Count I alleges excessive force in violation of 42 U.S.C. § 1983; Count II alleges that the City, Cook County, and Dart acted pursuant to policies and practices to deprive him of medical attention in violation of § 1983; Count III seeks damages for intentional infliction of emotional distress; Count IV attempts to hold Defendants responsible for the actions of its employees under *respondent superior*; and finally, Count V asserts common law claims. All Defendants have filed motions to dismiss.

## STANDARD OF REVIEW

The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of the complaint, not to decide the merits of the case. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). Accordingly, a court may grant a motion to dismiss under

Rule 12(b)(6) only if a complaint lacks "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007); *see Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618-19 (7th Cir. 2007); *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776-77 (7th Cir. 2007). A sufficient complaint need not give "detailed factual allegations," but it must provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-65 (2007); *Killingsworth*, 507 F.3d at 618-19. These requirements ensure that the defendant receives "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964 (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 102 (1957)); *see also* Fed. R. Civ. P. 8(a). In evaluating a motion to dismiss, we must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Thompson v. Ill. Dep't of Prof'l Reg.*, 300 F.3d 750, 753 (7th Cir. 2002). However, "our favor toward the nonmoving party does not extend to drawing 'inferences that are supported by only speculation or conjecture.'" *Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008) (quoting *Fischer v. Avanade, Inc.*, 519 F.3d 393, 401 (7th Cir. 2008)). Therefore, the plaintiff cannot merely "raise some metaphysical doubt as to the material facts; he must come forward with specific facts showing that there is a genuine issue for trial." *Keri v. Bd. of Trs. of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006).

## ANALYSIS

### I. Claims Against Cook County

Eckert alleges that Cook County "is responsible for the policies, practices and procedures of the Cook County Sheriff's deputies and its police officers." (*Id.* ¶ 4.) Eckert therefore claims

that Cook County is liable for the Sheriff's actions under *respondeat superior*. (Compl. ¶ 50.) Cook County moves to dismiss the claims against it, arguing that Cook County cannot be held liable for the sheriff's actions under *respondeat superior*. (Cook County Mot. at 2-3.)

Under Illinois law, "Illinois sheriffs are independently elected officials not subject to the control of the county." *Ryan v. County of DuPage*, 45 F.3d 1090, 1092 (7th Cir. 1995); *see also Franklin v. Zaruba*, 150 F.3d 682, 685 (7th Cir. 1998); *Moy v. County of Cook*, 159 Ill. 2d 519, 532, 640 N.E.2d 926, 931 (Ill. 1994). As Eckert concedes, Cook County cannot be held liable for the actions of the sheriff or his employees under *a respondeat superior* theory.[2] *Moy*, 159 Ill. 2d at 532, 640 N.E.2d at 931. Cook County's department of corrections also falls within the purview of the sheriff's department. *Id.* at 526, 640 N.E.2d at 929 (citing 55 Ill. Comp. Stat. 5/3-15002). Because the officials and employees of the Cook County jail are employees of the sheriff, Cook County also cannot be held liable for their actions under a *respondeat superior* theory. *Id.* at 532, 640 N.E.2d at 931 (holding that the county cannot be held vicariously liable for the actions of the sheriff, which included allegations based on an incident at the Cook County jail). Eckert's attempt to hold Cook County liable under *respondeat superior* must fail. (*See* Compl. ¶¶ 4, 49.)

Cook County points out that Illinois law requires municipalities to indemnify any judgment or settlement entered against its sheriffs and their deputies. (Cook County Mot. at 4.) In response to a certified question from the Seventh Circuit, the Illinois Supreme Court held that "[b]ecause the office of the sheriff is funded by the county, the county is therefore required to

---

[2] Although Eckert affirmatively pleads *respondeat superior* liability against Cook County (Compl. ¶ 50), he also affirmatively acknowledges that Cook County cannot be liable based on *respondeat superior* (Resp. at 5).

pay a judgment entered against a sheriff's office in an official capacity." *Carver v. Sheriff of LaSalle County*, 203 Ill. 2d 497, 499, 787 N.E.2d 127, 129 (Ill. 2003). When the case was again before the Seventh Circuit, it held "that a county in Illinois is a necessary party in any suit seeking damages from an independently elected county officer (sheriff, assessor, clerk of court, and so on) in an official capacity." *Carver v. Sheriff of LaSalle County*, 324 F.3d 947, 948 (7th Cir. 2003). Although Cook County cannot be held liable for the sheriff's or his deputies' actions under *respondeat superior*, under *Carver*, it can be forced to indemnify Dart for any official capacity liability he incurs. Cook County argues that because Eckert did not assert such an indemnification claim against it, Cook County must be dismissed from the action. However, Eckert responds that he "specifically plead [a]n indemnification claim" in Counts IV and V of his Complaint. (Resp. at 4.) Although Eckert never uses the word "indemnification," he does cite the Illinois statute that requires municipalities to pay the judgment or settlement entered against a sheriff's office in Count V[3] (Compl. ¶ 57 (citing 75 Ill. Comp. Stat. 10/9-102).) Because Eckert has sufficiently plead indemnification, we deny Cook County's motion to dismiss the action against it in its entirety. Cook County must remain a named defendant for the purposes of indemnification only.

---

[3] In their motion, Cook County and Dart move to dismiss County V because it alleges unspecified common law claims, without clarifying the nature of those claims. (Cook County Mot. at 7; Reply at 3.) To the extent that Count V attempts to include common law claims in addition to the request for indemnification discussed above, we agree that Count V is insufficient. We "refuse[] to scour the complaint for allegations that would support such claims." *See Chaney v. City of Chi.*, No. 08 C 2629, 1996 WL 718519, at *7 (N.D. Ill. Dec. 12, 1996). Accordingly, we read Count V as asserting an indemnification claim, but not as asserting any additional common law claims that could possibly be satisfied by the totality of Eckert's allegations.

**II. Count I (§ 1983 Claim)**

Dart argues that Count I should be dismissed against him because it is vague and because it is duplicative of Count II. (Cook County Mot. at 5.) Count I is apparently an excessive force claim against the Defendants, pursuant to § 1983. (Compl. ¶¶ 24-35; Resp. at 5.) Dart contends that he cannot determine whether the claim is against him in his official or individual capacity. (Cook County Mot. at 5.) If the claim is against him in his individual capacity, Dart argues that Eckert has not alleged that he was personally involved in the constitutional violation (*Id.* at 6-7); if it is against Dart in his official capacity, he argues that it is duplicative of Count II, which asserts a § 1983 claim against the Defendants, pursuant to *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 691, 98 S. Ct. 2018, 2035 (1978) (*Id.* at 5-6). In Eckert's response to Dart's motion, he concedes that "Dart is named in his official capacity" in Count I. (Resp. at 5.) Therefore, we need not address Dart's arguments regarding individual capacity.

Under § 1983, "[w]hen a plaintiff sues an individual officer in his official capacity, the suit is treated as if the plaintiff has sued the municipality itself." *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 765 (7th Cir. 2006); *see also Monell*, 436 U.S. at 690, n.55, 98 S. Ct. at 2035 ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent."). When an officer is sued in his official capacity, a plaintiff must satisfy the standard set forth in *Monell*. *See, e.g.*, *Grieveson v. Anderson*, 538 F.3d 763, 771-73 (7th Cir. 2008) (applying the *Monell* standards to a claim against a sheriff in his official capacity); *Pourghoraishi*, 449 F.3d at 765 (discussing the *Monell* standards in assessing the liability of an officer sued in his official capacity).

Eckert has asserted a separate claim under *Monell* in Count II. (Compl. ¶¶ 36-43.) Because a claim against an officer in his or her official capacity must satisfy the standards set out in *Monell*, the assertions made in Count II are duplicative of Count I to the extent that Count I asserts claims against Dart in his official capacity. Both claims assert that the City, Cook County, and Dart maintained unconstitutional policies which resulted in Eckert's constitutional violation. (*Id.* ¶¶ 27-28, 38.) They also both assert that the City, Cook County, and Dart exhibited "deliberate indifference towards" Eckert as to their failure to supervise and train their employees. (*Id.* ¶¶ 29, 38.) Count I does include allegations regarding the actions of some of the individual, unnamed officers and/or deputies, which are not included in Count II. (*Id.* ¶¶ 31-33.) However, those allegations do not make the count as against Dart substantially different from the allegations in Count II. Because Count I asserts an official capacity claim against Dart that is substantially identical to the *Monell* claim against him in Count II, we dismiss the claims against Dart in Count I.

### III. Count II (*Monell* Claim)

The City, joined by Dart, moves to dismiss Count II, arguing that Eckert has not sufficiently identified the underlying municipal policy at issue and that he has not alleged a causal link between any of the policies and his constitutional violations. (City Mot. ¶¶ 8-13.) In *Monell*, the Supreme Court held that a local governmental unit can be directly liable under § 1983 when the "execution of a government's policy or custom" inflicts the constitutional injury at issue in the case. 436 U.S. at 694, 98 S. Ct. at 2037. To state a § 1983 claim against a municipality or an officer sued in his official capacity, "the complaint must allege that an official policy or custom not only caused the constitutional violation, but was the 'moving force' behind

it." *Estate of Sims v. County of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007). There are three methods by which a plaintiff can demonstrate an official policy or custom: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Id.* at 515 (citing *Lewis v. City of Chi.*, 496 F.3d 645, 656 (7th Cir. 2007)).

Here, Eckert has alleged that the City, Cook County, and Dart each had the following policies that led to his constitutional violations: (1) a policy of "failing to provide reasonable medical attention to inmates and those jailed and/or accused" (Compl. ¶ 38(a)); (2) a policy of "failing to properly train, supervise, discipline, monitor, counsel, and/or otherwise control officers, particularly those who are repeatedly accused of physical and other abuse of suspects . . . ; of false arrests, wrongful imprisonments, malicious prosecutions and wrongful convictions; [and] of making false reports and statements" (*Id.* ¶ 38(b)); and (3) "the police code of silence, specifically in cases where officers and deputies engaged in the violations articulated above" (*Id.* ¶ 38©). Defendants contend that these policies are not sufficiently plead and are not directly linked to Eckert's constitutional violations.

"Our first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385, 109 S. Ct. 1197, 1203 (1989); *Estate of Sims*, 506 F.3d at 515. We agree with Defendants that the policies alleged in paragraph 38(b) and © are not directly linked to Eckert's alleged constitutional violation. Eckert has alleged that the Defendants violated his constitutional rights by refusing

-9-

him medical treatment and medication. (*Id.* ¶¶ 21-23.) However, two of the alleged policies are related to false arrests, wrongful imprisonments, malicious prosecutions, and wrongful convictions. (Compl. ¶ 38(b)-©.) Eckert has not alleged that his constitutional rights were violated by being falsely arrested or wrongly imprisoned, prosecuted, or convicted; he has alleged that his constitutional rights were violated when he was refused medical treatment, pain medicine, and forced to use his leg in such a manner that exacerbated his injuries. Eckert has not sufficiently alleged a causal link between these policies and his injuries. Accordingly, we grant the Defendants' motion to dismiss Count II as to the policies alleged in paragraph 38(b) and © of Eckert's complaint.

The policy alleged in paragraph 38(a), however, is directly linked to Eckert's constitutional violation. In paragraph 38(a), Eckert alleges that the City, Cook County, and Dart had "interrelated *de facto* policies, practices, and customs which included . . . failing to provide reasonable medical attention to inmates and those jailed and/or accused." (*Id.* ¶ 38(a).) Even Cook County recognized the likelihood of a causal connection between this alleged policy and Eckert's alleged constitutional violation. (Cook County Reply at 4 ("[T]he only alleged policy which may survive any scrutiny under Rule 12(b)(6) and Rule 8 is that policy stated in subsection (a) of Paragraph 38.").) A policy of failing to provide medical care is precisely the kind of policy that would cause an officer or deputy to refuse medical treatment to an inmate. Thus, there is a direct link between the policed alleged in paragraph 38(a) and Eckert's alleged constitutional violations.

Additionally, Eckert's allegations regarding this policy are sufficiently specific to state a claim against the Defendants. The Defendants argue that Eckert "fails to adequately define the

-10-

'custom, policy, or practice' that allegedly led to the violation of his constitutional rights" and failed to identify this custom, policy, or practice with specificity. (City Mot. ¶¶ 8-9.) "[T]he Supreme Court has rejected any heightened pleading requirement for claims against a municipality." *Jones v. Bremen High Sch. Dist. 228*, No. 08 C 3548, 2009 WL 537073, at *4 (N.D. Ill. Mar. 4, 2009); *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 165-66, 113 S. Ct. 1160, 1162 (1993). Post-*Bell Atlantic*, other courts in this district have affirmed *Leatherman's* holding that plaintiffs are not required to plead with specificity the existence of such a municipal policy. *Jones*, 2009 WL 537073, at *4; *Bryant v. Oak Forest High Sch.*, No. 06 C 5697, 2007 WL 2738544, at *2 (N.D. Ill. Sept. 12, 2007) ("[A] complaint alleging violations of 42 U.S.C. § 1983, whether directed towards an individual or a municipality, is not subject to a heightened pleading standard of factual specificity."). We agree with Defendants that under the post-*Bell Atlantic* pleading standard, a plaintiff must provide more than boilerplate allegations to survive a motion to dismiss. *See Johnson v. City of Chi.*, No. 08 C 2629, slip op. at 3 (N.D. Ill. Feb. 2, 2009). However, *Bell Atlantic* only requires plaintiffs to allege "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 570, 127 S. Ct. at 1974.

Eckert alleged the existence of a policy and explained that the policy was one of "failing to provide reasonable medical attention." (Compl. ¶ 38(a).) This allegation was specific enough to place Defendants on notice of the type of policy Eckert alleged existed. Defendants contend that the alleged policies did "nothing more than refer to an 'abstract' policy of violating constitutional rights." (City Mot. ¶ 10.) We recognize that Eckert's allegations in paragraphs 38(b)-© are much more abstract and unrelated than those contained in paragraph 38(a).

However, as we have already concluded that subsections (b) and © must be dismissed because they are not directly linked to Eckert's alleged constitutional violation, we will not address whether those alleged policies would satisfy the *Bell Atlantic* pleading standards. The allegations in subsection (a), however, are not analogous to boilerplate allegations dismissed by other courts in this district. *See, e.g.*, *Johnson*, No. 08 C 2629, slip op. at 3 (dismissing plaintiff's complaint, which alleged "unchecked misconduct . . . and a 'code of silence,'" because plaintiff "must assert more than boilerplate allegations to withstand a motion to dismiss"); *Chaparro v. Powell*, No. 07 C 5277, 2008 WL 68683, at *3 (N.D. Ill. Jan. 2, 2008) (dismissing plaintiff's complaint, which "relie[d] on a purported 'code of silence' based on numerous, tenuously related instances of police misconduct"). The allegations in paragraph 38(a) sufficiently identify an official policy, practice, or custom that caused Eckert's constitutional violation. Accordingly, Defendant's motion to dismiss Count II is granted as to the alleged policies mentioned in paragraph 38(b) and © of Eckert's complaint, but denied as to subsection (a).

## CONCLUSION

For the reasons set forth above, we grant Cook County's motion to dismiss the substantive allegations against it, but deny its motion to dismiss it as a party because it is a necessary party for indemnification purposes. We grant Dart's motion to dismiss the claims against him in Count I. Finally, we grant in part and deny in part the joint motion to dismiss Count II.

Honorable Marvin E. Aspen
United States District Judge

Date: May 20, 2009